MARTIN ANNA, by Charles Anna, Next Friend, Appellant, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Respondent.

**St. Louis Court of Appeals, November 11, 1902.**

Contributory Negligence of Infant: PRACTICE, TRIAL. Plaintiff, a child, being caught under a train of the defendant railway company while coasting in a toy wagon, lodged in a ditch so that some cars passed over without hurting him; but the boy crawled out of the ditch and had his foot mashed in trying to get from under the train. `Held, it was for the jury to decide whether taking into account the child's age, his alarming situation and all the circumstances, he was guilty of contributory negligence in crawling out of the depression where he was safe, there being no showing that the railway company was to blame for his being caught under the train in the first place.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

ORDER GRANTING NEW TRIAL AFFIRMED AND CAUSE REMANDED.

STATEMENT OF THE CASE.

Martin Anna was a lad between ten and eleven years of age at the time his left foot was crushed on a switch track of the Missouri Pacific Railway Company in the city of St. Louis, by some freight cars passing over it.

The accident occurred at the foot of Cherokee. street, an east and west thoroughfare which intersects some of the defendant's tracks running north and south near the west bank of the Mississippi river.

The testimony is that the improved portion of the street ended at the west side of the railway tracks, no crossing having been made, although wagons and teams

belonging to the Anheuser-Busch Brewing Association were driven across the tracks at that place and then north along the east side of the tracks to an icehouse some distance above, and that people and wagons crossed in going to and from shanties built on the river bank. On the north side of Cherokee street there was a sidewalk coming down to the switches and at the northwest corner stood a building, perhaps the icehouse mentioned above, that obstructed the view of the tracks to the north, so that a person going down the sidewalk towards the river could not see cars approaching from that direction until he emerged beyond the line of the building, which would carry him within three feet of the first switch.

Martin Anna and his younger brother were coasting down the sidewalk on a Sunday afternoon in a toy express wagon, such as boys play with; at the same time an engine pushing some cars was backing along the west switch from the north and the wagon with Martin Anna in it either ran onto said switch and was struck by the rear car, as some witnesses said, or ran between the trucks of the car, as others said. At that spot there was a ditch or depression of uncertain depth in defendant's roadbed between its tracks in which Martin lodged and lay unhurt until two or more cars had passed over him, when in the excitement and confusion of the moment, which was increased by bystanders shouting to him to get out, he raised himself from the ditch and attempted to crawl from under the train with the result that the wheels caught his left foot on the rail and crushed it.

The petition charges the defendant's employees with several careless acts and omissions of duty, to-wit: failure to ring the bell or blow the whistle while the train was backing, having no watchman at the crossing to notify persons of the approach of the train and no man on the rear car to keep a lookout while the train backed, as an ordinance of the city of St. Louis required, and neglect of the servants operating the train to stop its movement as soon as possible after

discovering or being able by ordinary care, to discover the danger to the plaintiff.

The defenses pleaded were a general denial and a plea of contributory negligence, which charged the plaintiff with running the wagon he was in so rapidly that he was unable to control its movements although he knew there was danger ahead, failing to look or listen for the approach of trains or heed warnings given by persons near the track, or the noise of the train and the engine bell, with neglecting to lie still after he was in a safe place under the train and to otherwise exercise such care as a boy of his age would have exercised under similar circumstances.

At the instance of the defendant the court gave the following instruction:

"7.   The jury are instructed to disregard all the evidence taken in this cause, except that which relates to the allegation in the petition, that the servants of defendant in charge of the train discovered, or could, by the exercise of ordinary care, have discovered, the peril of plaintiff in time, by the exercise of ordinary care, to have avoided injury to plaintiff, and in respect to that allegation, the jury are instructed that, unless they believe from the evidence that the employees of defendant in charge of the train which injured the plaintiff knew that he was under the cars while the same were moving, or that, by the exercise of ordinary care they might have known, after he had been thrown under them, that he was there, and failed to stop the train as soon as they could stop it, the verdict must be for the defendant."

This instruction was likewise given by the court of its own motion:

"1C.   The jurors are instructed that if you believe and find from the evidence in this case that on the twenty-sixth day of August, 1900, Cherokee street was an open public street in the city of St. Louis, and that the railway switch track mentioned in the evidence was laid upon and across said street; and if you further

believe and find from the evidence that on said day the defendant, St. Louis, Iron Mountain & Southern Railway Company was running and operating its cars upon and over said track and that the plaintiff, Martin Anna, while riding in a small wagon in an eastwardly direction on the north side of said Cherokee street, ran into, or was struck by, the wheel or wheels of one of the cars of a train of cars of said defendant moving in a southwardly direction on said track at said time, and was thereby thrown under said train of cars; and if you further believe and find from the evidence that the servants and employees of defendant in charge of and operating the engine and said train of cars, discovered, or by the exercise of ordinary care might have discovered, the peril and danger of plaintiff near, or on said track, if you believe and find from the evidence he was in a position of danger, in time to have stopped said train of cars and averted the injury to plaintiff and that they failed to do so, then you should find a verdict for the plaintiff."

This instruction requested by the defendant was refused:

"2.    The jury are instructed that, if they find from the evidence that both plaintiff and defendant were guilty of negligence which directly contributed to plaintiff's injury, plaintiff can not recover."

The jury returned a verdict for the plaintiff, and defendant filed a motion for a new trial which the court sustained on two grounds: first, that error was committed in refusing said instruction No. 2; second, that error was committed in failing to embody in instruction No. 1C. the defense of contributory negligence specially pleaded, that plaintiff failed to lie still after he got upon the railroad track under the train.

This appeal was taken by plaintiff from the order sutaining the motion for a new trial.

*Webb & Webb* and *Jno. A. Blevins* for appellant.

(1)    The motion for new trial should have been overruled, as the court committed no error in giving

or refusing instructions. (2) Instruction number two, asked by the defendant, was properly refused. It is too general and covers the whole case. Even if it would have been proper to have instructed the jury upon plaintiff's contributory negligence at the time he attempted to get out from under the train, the defendant having failed to ask for an appropriate instruction presenting such issue to the jury, the court was not bound on its own motion to supply the deficiency. Drey v. Doyle, 99 Mo. 459; Dempsey v. Reinstedler, 22 Mo. App. 45. (3) One in a perilous position may attempt to escape a reasonably apprehended danger, and his action in so doing is not to be determined by what a person of ordinary prudence and care would have done under the circumstances. There is no rule of human conduct whereby a standard can be erected in such a case for the guidance of the jury. Thomason v. Railroad, 74 Mo. 553; Siegrist v. Arnot, 86 Mo. 200.

*Martin L. Clardy* and *Henry G. Herbel* for respondent.

(1) Our contention is that the plaintiff's negligence in attempting to crawl out of the gutter in which he was lying in safety was an independent act of negligence on his part, which was contemporaneous with defendant's alleged negligence in failing to stop the train, and was, hence, a direct and proximate contributing cause of his injury. In other words, his negligent act (if the jury should have so found it to be) mingled with the negligence of defendant (if negligent it was) up to the very moment that the injury was inflicted, and when such conditions exist no recovery can be had. Watson v. Railway, 133 Mo. 251; Sinclair v. Railway, 133 Mo. 245. (2) In view of the manifest correctness of the trial court's action in sustaining the motion for a new trial and "the well-established rule of appellate courts not to interfere with the discretion of the trial courts in refusing or granting a new trial

unless it clearly appears that the discretion has been abused and injuriously exercised, the presumption being that the discretion was properly exercised," we respectfully submit that the order sustaining the motion should be affirmed. Howland v. Reeves, 25 Mo. App. 467; Railway v. McElroy, 161 Mo. 594; Loyd v. Railway, 53 Mo. 515; Reid v. Ins. Co., 58 Mo. 421.

GOODE, J.—The trial court excluded from the consideration of the jury all evidence tending to establish any act of negligence on the part of the defendant except that its servants in charge of the train omitted to stop the train as soon as possible after they knew of the perilous position of the plaintiff, and as no question has been raised concerning the correctness of that ruling, we will assume it was correct in disposing of the appeal. The court must have thought the defendant's servants were innocent of blame in other respects, or that the plaintiff's own carelessness so contributed to his being caught under the train as to shut him off from relief because of any negligent act of which the defendant's employees may have been guilty except neglect to use proper measures to save him after they knew he was there.

The case stands before us, then, for decision on the conduct of the parties after the boy had lodged in the ditch or depression between the rails and the efforts made by the trainmen and himself to obviate a harmful result.

Did the court fairly present the behavior of both sides in the instruction given, so as to enlighten the jury about the issue and enable them to intelligently decide whether the plaintiff or the defendant's servants, or both, did what was incumbent on them to do to prevent the plaintiff from being crushed?

The only negligent act of which the plaintiff is accused in that emergency is that instead of lying still where the cars could not hurt him, he left that position of safety, crept onto a rail of the track and in consequence got his foot mashed. His counsel admits he

did this, but contends that in law it was not a negligent act which will bar his recovery, considering the fright and confusion then affecting him and that, therefore, the court was not bound to leave it to the jury to say whether it constituted a defense.

We agree that the youth of the boy and his dismay and confusion in his terrible danger, place the degree of care he was bound to exercise below what is required of a person of mature years in a position of safety; but can not agree either that the law excuses him for not exercising any prudence whatever, or that evidence tending to show his behavior was negligent is lacking. As to the latter point, the fact that one or more cars passed over him while he lay where he originally fell, without hurting him, is evidence tending to prove he was negligent in moving while the cars were still passing.

The rule of law by which responsibility for injury to a person in a situation of danger like the one plaintiff was in is measured, is, that the individual thus exposed must use the care that an ordinarily prudent person of his years and capacity may be expected to use in a like situation. Klieber v. Railway, 107 Mo. 240; Twomley v. Railway, 69 N. Y. 158; Richmond, etc., R'y v. Farmer, 97 Ala. 141; Lincoln Rapid Transit Co. v. Nichols, 37 Neb. 302; Beach on Contrib. Neg. (3 Ed.), sec. 40.

The above rule is applied in most jurisdictions even when the plaintiff's danger was due to the defendant's negligence, and is certainly applicable to this case in which the plaintiff's danger was not thus produced, according to the theory on which the lower court submitted the case to the jury and as it is presented to us.

We agree with the learned trial judge that it is immaterial whether the first instruction on contributory negligence was too general or not; because the instruction given by the court of its own motion attempted to cover the entire case and erroneously omitted the defense of plaintiff's contributory negligence

in moving from a place of safety to one of danger.

We approve the order granting defendant a new trial and remand the cause. *Bland, P. J.,* and *Barclay, J.,* concur.